# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| B.H., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 88 C 5599 |
| ) | |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| BEVERLY J. WALKER, Acting Director, ) | |
| Illinois Department of Children and ) | |
| Family Services, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In this case, which will reach its thirtieth birthday in a couple of weeks, plaintiffs move to compel production of information. In essence, theirs is a motion to enforce a consent decree entered by Judge Grady on December 20, 1991 and restated on July 15, 1997. For the reasons set forth below, the Court denies the motion [600].

## I.   BACKGROUND

In the late 1980's, plaintiffs, who were children removed from their homes and placed in the custody of the Illinois Department of Children and Family Service ("DCFS"), filed this suit. They alleged that they had been removed from their families and then subjected to further harm and abuse when DCFS failed to place them in safe and stable living situations. The parties reached a settlement, in the form of a consent decree, which was approved and entered by Judge Grady. That decree has been altered over the years, and the parties agree that the restated consent decree is located at Docket 456-2.

The restated consent decree states, in relevant part:

## DEFINITIONS

1. As used herein the following terms have the following meanings:

* * *

  e. "Child," "children," "class members" or "plaintiffs" all mean solely members of the class certified by this Court's order dated February 22, 1989, and defined as all persons who, on or after the date of commencement of this action, are in the custody of the Illinois Department of Children and Family Services and who have been placed somewhere other than with their parents.

* * *

## DISCLAIMER

* * *

3. This Decree shall apply only to those persons who are members of the plaintiff class. This Decree creates no rights in favor of any other person and creates no obligations or duties on the part of defendant beyond the terms of this Decree.

* * *

## PURPOSE OF DECREE AND STANDARD OF CARE FOR CLASS MEMBERS

4. It is the purpose of this Decree to assure that DCFS provides children with at least minimally adequate care. Defendant agrees that, for purposes of this Decree, DCFS's responsibility to provide such care for plaintiffs includes an obligation to create and maintain a system which assures children are treated in conformity with the following standards of care:

  a. Children shall be free from foreseeable and preventable physical harm.

* * *

5. In order to meet this standard of care, it shall be necessary for DCFS to create and maintain a system which:

  a. provides that children will be timely and stably placed in safe and appropriate living arrangements;

  b. provides that reasonable efforts, as determined based on individual circumstances (including consideration of whether no efforts would be reasonable) shall be made to prevent removal of children from their homes and stably to reunite children with their parents, where appropriate and consistent with the best interests of the child;

* * *

## PROTECTIVE SERVICES AND INITIAL ASSESSMENT

* * *

8. **Reasonable Efforts to Prevent Placement.** As of the date of the entry of this Order, DCFS shall not remove a child from a parent or continue the

removal by another person authorized to take protective custody under state law unless the standard set forth in Ill. Rev. Stat. ch. 23, ¶ 2055 is met, and unless DCFS has made reasonable efforts to prevent or eliminate the need for removal of the child. "Reasonable efforts" as used in this paragraph and paragraph 7 means such efforts to preserve the family as are consistent with good social work practice based on the individual circumstances of the case and the best interest of the child, and may include but are not limited to the offer and provision of appropriate family preservation services from among those listed at Ill. Rev. Stat. ch. 23, ¶ 2058.2. In certain instances, it may be that, due to the individual circumstances of the case and the best interests of the child, no efforts reasonably can be made to preserve the family. Nothing in this paragraph will require DCFS to refrain from taking protective custody if there is reason to believe the child is in imminent danger to his or her life or health.

\* \* \*

MONITORING AND IMPLEMENTATION

\* \* \*

      68.    **Monitoring Compliance with this Decree.** Class counsel for plaintiffs shall receive from DCFS sufficient information to permit plaintiffs to evaluate the status of DCFS's compliance with this Decree. The obligations to provide such information will be discharged in the following manner:

      a.    Defendant shall provide information regarding compliance with this Decree, the Implementation Plan and the Annual Plans to class counsel for plaintiffs on a semi-annual basis . . . [T]he parties will jointly develop a set of categories of measurable information to assist in evaluating the quality of care provided to children. To the extent possible, the parties will endeavor to use these categories to develop standards to evaluate compliance with this Decree. . . .

      b.    In addition to the Semi-Annual Report, but consistent with the considerations in subparagraph a, class counsel for plaintiffs may at any time make reasonable requests for, and DCFS shall provide, additional reports or information. DCFS shall ensure that class counsel for plaintiffs, upon prior notice to defendant's counsel, shall have reasonable access to records and information of DCFS of any person or agency contracting with DCFS to provide care and services to children relating to the provisions of services to class members. . . .

      c.    If the parties are unable to agree on the provision of information or access to records, information, persons or agencies set forth in this paragraph, either party may file an appropriate motion with the Court for relief.

Restated Consent Decree/Docket 456-2 at 5-6, 8, 9, 10, 12, 55, 59-62.

In addition, the restated consent decree sets out required staffing levels. For example, the parties agreed that child protective services investigators could be assigned no more than twelve

3

new abuse or neglect investigations each month for nine months of the year and no more than fifteen during the other three months of the year. (Restated Consent Decree/Docket 456-2 at 28). The parties also included a limit on the number of cases that could be handled by caseworkers working with intact families, i.e., those families from which no child had been removed. Specifically, the parties agreed that each caseworker should be assigned a caseload not to exceed 20 intact families per caseworker. (Restated Consent Decree/Docket 456-2 at 28).

On November 6, 2017, plaintiffs requested that defendant provide information. Specifically, plaintiffs requested that defendants:

(i) State what practice model, if any, the Department was using for intact family service provision pre-privatization.
(ii) By agency, identify the practice model (if any) that each private agency providing intact services presently uses for intact family services;
(iii) From January, 2016 forward, by agency, identify the total number of intact cases that are or have been the subject of a further call and investigation while intact services were being provided, the name of the child involved for each, and the city where the family was residing at the relevant times; if the family receiving intact services has been the subject of more than one further call and investigation, each of those instances should be counted.
(iv) For each intact case identified in response to part (ii) state whether the Department conducted an investigation as to the sufficiency of the initial investigation by the Department and/or the sufficiency of services provided by the private agency and state the determinations reached for that investigation;
(v) State how the Department is identifying which intact cases present "high risk" and thus merit transfer back to the Department for handling;
(vi) By region, identify the DCFS workers who have sufficient experience to handle "high risk" intact family cases and the capacity to accept such cases while remaining within the BH caseload limits;
(vii) Provide the current caseload for any internal DCFS worker who now is handling intact family cases (we understand that there are at least 160 intact cases presently assigned to DCFS workers);
(viii) Explain what the Department is doing to ensure that its assignment of intact cases to agencies who are already at their contract capacity does not result in excessive caseloads for the agency's workers; and
(ix) Explain how private agencies are paid for case assignments that exceed the agency's contract capacity;

4

> (x) Explain what the Department is doing to address insufficient provider resources for the current intact family caseload (we understand that assignments to private providers at present exceeds the total contracted capacity by at least 250 cases).

(Docket 600-1 at 21-22).

After several extensions, defendant responded on January 26, 2018. With respect to caseloads for intact-family caseworkers, defendant stated in its response:

> Beginning in August 2017, DCFS developed a new report to monitor intact family services, including caseloads for individual caseworkers servicing intact family service cases. DCFS can provide reports on caseloads for individual caseworkers servicing intact family services, which include DCFS caseworkers and POS caseworkers from August 2017 going forward. These reports are run on a daily basis and DCFS recommends that this information be provided to you on a monthly basis and that DCFS provide the reports for the same date every month in order for you to determine compliance with Paragraph 27 of the Restated Consent Decree. I have attached the caseload data for January 25, 2018 and can provide this data for the 25th day of the month for August 2017 through December 2017.

(Docket 600-1 at 50). With respect to the other information plaintiffs requested, defendant stated that it was not going to supply the information on the grounds that the restated consent decree does not require it to provide such information.

Plaintiffs filed a motion to compel defendant to provide the information. Plaintiffs assert that the information should be provided pursuant to ¶¶ 4(a), 5(a), 5(b), 8 and 27(a) of the restated consent decree. Because plaintiffs rely on the terms of the restated consent decree as the basis of their motion, they are, in effect, asking the Court to enforce the restated consent decree.

## II. STANDARD ON A MOTION TO ENFORCE A CONSENT DECREE

A court has the inherent authority to enforce its own orders. A consent decree is "a court order that embodies the terms agreed upon by the parties as a compromise to litigation." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). A court interprets a consent decree as it would any other contract. *Bailey v. Roob*, 567 F.3d 930, 940 (7th Cir. 2009); *Alshabkhoun*,

5

277 F.3d at 934. "Unless there is a substantial claim under federal law, the district judge should not enter or continue to enforce a consent decree affecting the operation of a governmental body." *Evans v. City of Chi.*, 10 F.3d 474, 483 (7th Cir. 1993).

## III. DISCUSSION

Plaintiffs seek to enforce the consent decree by compelling defendant to produce a significant amount of information about intact families, i.e., families from which no child has been removed.

The restated consent decree allows plaintiffs to obtain information from defendant so that plaintiffs can evaluate whether defendant is complying with the decree. Specifically, paragraph 68 of the restated consent decree states, "Class counsel for plaintiffs shall receive from DCFS sufficient information to permit plaintiffs to evaluate the status of DCFS's compliance with this Decree." (Restated Consent Decree/Docket 456-2 at ¶ 68). The decree also allows counsel for plaintiffs to "make reasonable requests" for additional reports or information. (Restated Consent Decree/Docket 456-2 at ¶ 68(b)).

In support of their motion, plaintiffs argue that they should be provided information about intact families, because the "Plaintiff Class includes children who *should have* been removed from their families upon a first report to the hotline, were left at home with a plan for intact services, and then suffered further injury (or even death) as a result." (Plaintiff's motion [600] at 7). The Court disagrees. The restated consent decree explicitly defines the class as "persons who, on or after the date of commencement of this action, *are in the custody* of the Illinois Department of Children and Family Services and who have been placed somewhere other than with their parents." (Restated Consent Decree/Docket 456-2 at ¶ 1(e) (emphasis added)). Thus, children in intact families are *not* members of the class and are not covered by the restated

consent decree. The class definition does not provide a hook for plaintiffs to obtain information about services to intact families.

Plaintiffs also state that particular provisions of the restated consent decree entitle them to information about intact families. Specifically, plaintiffs assert that paragraphs 4(a), 5(a), 5(b), 8 and 27(a) entitle them to the information they have requested. The Court disagrees. Paragraphs 4(a) and 5(a) apply only to class members. Paragraph 4(a) states, "Children shall be free from foreseeable and preventable physical harm," while paragraph 5(a) says that "children will be timely and stably placed in safe and appropriate living arrangements." (Restated Consent Decree/Docket 456-2 at ¶¶ 4(a) & 5(a)). Given that the decree defines children as the members of the class, which does not include the offspring of intact families (Restated Consent Decree/Docket 456-2 at ¶ 1(e)), paragraphs 4(a) and 5(a) do not apply to intact families. Thus, plaintiffs do not need information about intact families in order to evaluate whether defendant is complying with ¶¶ 4(a) and 5(a).

Nor do the provisions of ¶¶ 5(b) and 8 grant plaintiffs carte blanche to demand information about intact families. Those provisions obligate defendant to make "reasonable efforts" *not* to remove children from a home. (Restated Consent Decree/Docket 456-2 at ¶ 5(b) ("reasonable efforts, as determined based on individual circumstances (including consideration of whether no efforts would be reasonable) shall be made to prevent removal of children from their homes and stably to reunite children with their parents") & ¶ 8 ("DCFS shall not remove a child from a parent or continue the removal by another person authorized to take protective custody under state law unless the standard set forth in Ill. Rev. Stat. ch. 23, ¶ 2055 is met, and unless DCFS has made reasonable efforts to prevent or eliminate the need for removal of the child.")). Given that the decree allows plaintiffs access to information in order to evaluate

7

compliance, the Court agrees that plaintiffs could inquire, with respect to particular class members (i.e., individuals who have been removed from parents), whether reasonable efforts were made to prevent removal of the particular class member before that particular class member was removed. The Court does not, however, agree that those provisions give plaintiffs carte blanche to request any information they might be interested in with respect to intact families. Plaintiffs have not limited their request to information about their own class members and whether defendant made reasonable efforts not to remove those class members from their homes. To allow plaintiffs to obtain all of the information they request about intact families (including the names and locations of children who are not class members but who were involved in intact family services) would expand the scope of the decree.

This does not, however, mean plaintiffs are entitled to no information about intact families. Paragraph 27(a) sets out a maximum caseload of 20 families per caseworker responsible for intact families. (Restated Consent Decree/Docket 456-2 at ¶ 27(a)). Plaintiffs can seek information to evaluate compliance with this provision. Plaintiffs requested information on caseloads, and defendant provided a snapshot of caseloads as of the day before it responded. Defendant also offered to send a report with such caseloads on a monthly basis. Plaintiffs describe the response as "unusable," but they do not explain why the information does not suffice. It sounds sufficient to the Court.

Accordingly, plaintiffs' motion to enforce the consent decree by compelling the production of information is denied. Because the Court is denying the motion to enforce on the merits, it need not consider whether a substantial federal issue still exists in this case. *See Evans*, 10 F.3d at 480 ("All of these cases illustrate the principle we recognize today: entry and continued enforcement of a consent decree regulating the operation of a governmental body

depends on the existence of a substantial claim under federal law. Unless there is such a claim, the consent decree is no more than a contract, whose enforcement cannot be supported by the diversity jurisdiction and that has in court no more force than it would have outside of court. Prospective enforcement therefore is 'inequitable' within the meaning of Rule 60(b)(5).") (internal citations omitted).

## IV. CONCLUSION

For the reasons set forth above, plaintiffs' motion [600] is denied.


**SO ORDERED.**                                    **ENTERED:** June 18, 2018

**JORGE L. ALONSO**
**United States District Judge**